## Thomas F. Hunt, Administrator, Appellee, v. L. Fish Furniture Company Appellant.

### Gen. No. 19,364.

1.  MASTER AND SERVANT, § 561*—*proof sufficient to sustain recovery upon a count alleging negligence in obstructing passageway to fire escape.* In an action to recover for the death of an employe by fire in defendant's building, a count in a declaration-alleging defendant was negligent "in obstructing the passageway leading to the fire escape," *held* sufficient to sustain a recovery without proof that all the approaches or passageways were obstructed.

2.  MASTER AND SERVANT, § 615*—*when ordinances relating to fire escapes admissible.* In an action to recover for the death of an employe by fire in defendant's building alleged to have been caused by the failure of defendant to comply with certain city ordinances relating to fire escapes, *held* that the ordinances were applicable to the case and properly admitted in evidence.

3.  MASTER AND SERVANT, § 538*—*when count in declaration states cause of action for death of employe resulting from obstruction of access to fire escape.* In an action against an employer to recover for the death of an employe by fire in defendant's building resulting from obstruction of passageway to fire escape, a count in the declaration *held* to state a good cause of action under section 14 of the Factory Act of 1909, ch. 48, Hurd's R. S., J. & A. ¶ 5404, and also to state a good cause of action at common law.

4.  APPEAL AND ERROR, § 1447*—*when refusal to disregard count in declaration harmless.* Error of court in refusing to disregard a count in a declaration is harmless where there is proof sufficient to sustain a recovery on any other count.

Appeal from the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed June 15, 1914. Rehearing denied June 29, 1914. *Certiorari* denied by Supreme Court (making opinion final).

Statement by the Court. The plaintiff's intestate, a girl sixteen years old, lost her life in a fire which occurred on March 25, 1910, in a building on Wabash avenue, Chicago, used and occupied by defendant for the storage, repair and sale of furniture. The building was six stories high, facing east on Wabash avenue, was fifty feet wide and one hundred sixty-five feet

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section.number,

deep, and was flanked on both sides by four-story buildings, which were not so deep. On the outside of the rear wall of defendant's building, about ten or twelve feet from the north wall, was an iron ladder fire escape, extending from the roof down to the first floor, and thence to the ground by means of a counterbalance. Attached to the ladder at each floor was a metallic railed balcony, the floor of which was about on a level with the window sills in the real wall. In the southwest corner of the building was a freight elevator. Adjoining this, to the north, was a wooden stairway. At a point about the center of and adjoining the south wall was a passenger elevator provided with an automatic device which, when a fire occurred, stopped the elevator and shut down trap doors at each floor to prevent the fire from spreading through the elevator shaft. In the back part of the fourth floor was a room in which were kept cans of shellac, alcohol, turpentine, benzine and varnish. The fifth floor was used for the storage of stoves. The sixth floor was used in part for defendant's offices, and in part for the storage and repair of secondhand furniture. The office portion was separated from the furniture section by a wooden partition extending from a point on the north wall, twelve feet from the front of the building, south to a point twelve feet from the south wall of the building, thence west about one hundred feet to a point west of the passenger elevator, and thence south to the south wall. There was a sliding door in this partition near the elevator, and one other door about ten feet from the north wall. Eight girls, one of whom was the plaintiff's intestate, and several men, worked in the office thus inclosed. There were two windows in the south wall of the office, eighteen or twenty feet above the roof of the building to the south, and directly under these windows in the roof of that building was a skylight about six feet in width. Two windows in the north wall overlooked the building on

that side, and directly under these windows were small skylights in the roof of that building.

At the time of the fire, all of the sixth floor, except the "L" shaped space partitioned off for the office and the spaces occupied by the stairway and elevators, was filled with furniture of various kinds. This furniture was so arranged on the floor as to leave certain spaces for aisles or passageways. Ordinarily a space of that character was kept open between the passenger and freight elevators along the south wall, but the evidence shows that shortly before the fire broke out, two or three loads of furniture, chairs, etc., were brought up in the freight elevator, and some or all of it had been left in that passageway. Several of defendant's witnesses testified that at the time of the fire there was also an aisle running east and west, eight or ten feet from the north wall and about four feet wide. There is some evidence, however, to the effect that this aisle was also obstructed when the fire occurred. Two work benches stood against the west wall, one of which was directly in front of the window opening upon the fire escape. East of these benches there was a space in which repairing was done, and this space is also referred to by some of the witnesses as an aisle or passageway. Whether any of these aisles were wholly free from obstructions at the time of the fire is a question as to which there is much conflict in the evidence.

About 8:30 A. M., on March 25, 1910, one of the cans of benzine in the room in the rear of the fourth floor tipped over and caught fire. An explosion followed and the flames spread in every direction. The passenger elevator was stopped between the fourth and fifth floors by the automatic device, and the trapdoors closed. One of the men working on the sixth floor ran to the freight elevator and was taken down in it. Another ran to the door opposite the passenger elevator, opened the door, cried out "Fire," then made his way back to the rear of the room, where he stepped on a

tool chest, and from it to the work bench which stood next to the fire escape, raised the window, stepped out upon the iron balcony and went down the ladder of the fire escape. This witness testified that in going from the office to the fire escape he "pushed chiffoniers and things out of the way," as he went along. Another man, who was at work in the rear of the room, testified that his first knowledge of the fire came when one of the men going down in the freight elevator shouted "Fire"; that he looked down the elevator shaft, and saw flames and smoke coming up "pretty fast" from the fourth and fifth floors; that on looking towards the fire escape and stairs, he saw smoke coming up there as well; that he then went over to the passenger elevator, which "didn't seem to be working," so he went on into the office; that one of the men in the office was then opening the south windows and all of the girl employes were standing near him; that all of them then went around to the Wabash avenue windows, but, seeing no chance of escape in that direction, the witness opened the door leading from the office to the storeroom "and they all came out there;" that he "went right up to the first window from the door on the north side;" that one of the girls followed him that far, then turned back; that he then "went into the smoke," reached the second window, and jumped out. He went down eighteen feet to the roof of the building adjoining, struck the skylight and "stuck there," then scrambled out on the roof, and thus escaped. This witness further testified that when he jumped, the sixth floor was half full of smoke, and that "there was no way of getting out except jumping through the window." None of the office employes escaped. After the fire, their bodies were found on the floor of the office near the front windows.

The declaration, as originally filed, contained five counts. At the close of the plaintiff's case, the court instructed the jury that there could be no recovery

under the first two counts. The case went to the jury on the remaining counts.

The third count charges that the death of the plaintiff's intestate was caused by the negligence of the defendant "in obstructing the passageway leading to the fire escape," contrary to the provisions of an ordinance of the city of Chicago, making it unlawful, under any circumstances, during the occupation of any building for business purposes, to close up or obstruct the stairways or fire escapes, "or the approaches leading thereto."

The fourth count alleges that at the time of the fire another ordinance of the city of Chicago was in force, which provides that all buildings four or more stories in height, except private residences, shall be provided and equipped with one or more metallic standpipes and ladders combined, or stair fire escapes, with wrought iron or steel balconies, with suitable railings at each floor and firmly secured to the outer walls of the buildings; that the defendant had constructed a metallic ladder fire escape at the west end of the building, and that the entrance thereto from the sixth floor was through a window in the west wall; that by another ordinance then in force (which is set out in *haec verba*), it was provided that "every building in the city required by law to be equipped with metallic standpipes and wrought iron or steel balconies, or other fire escape devices, shall have displayed in conspicuous places on each floor of such building, notices sufficient in number and in plainly legible type at least six inches in height, indicating and showing the location of such metallic ladders, balconies and fire escapes and the easiest way to reach them;" that the defendant neglected to post any such notice on the sixth floor; that the deceased did not know there was a fire escape at the west end of the building, and because of such negligence of the defendant she was unable to escape.

The fifth count alleges that the plaintiff's intestate worked in the front part of the sixth floor, that the

building was one hundred seventy-five feet in length and that the only fire escape upon the building was at the west end of the same; that defendant used in its business large quantities of benzine, naphtha and like substances, which were kept on the fourth floor; that defendant "had then and there large quantities of mattresses, made of wool, hair, straw and other inflammable material;" that because of the presence of such benzine, naphtha and other substances in the building "in close proximity to said mattresses," etc., it was dangerous for persons to work there; that the danger from fire was known to defendant, and unknown to the plaintiff's intestate; that it was the duty of the defendant to exercise reasonable care to furnish the plaintiff's deceased with a reasonably safe place to work and to provide a reasonably safe exit from the sixth floor to the fire escape; that the defendant negligently failed to perform said duty, "but on the contrary, furnished the plaintiff's deceased with a place that was highly dangerous, owing to the fact that if a fire originated within said building, no means of escape from such fire was furnished to the plaintiff's deceased;" that defendant also negligently obstructed "the passageway or approach to the said fire escape," and negligently piled large quantities of furniture, mattresses and other materials on the sixth floor, and at the west end thereof, "thereby obstructing access to said fire escape," and rendering it impossible for those working in the office part of the sixth floor to reach the fire escape in case of fire; that on, etc., a fire originated below the sixth floor "by the said gasoline becoming ignited;" that the fire spread rapidly and immediately obstructed all stairways and elevator shafts leading from the sixth floor to the lower floors; and because of the negligence of defendant "in obstructing the approach or passageway leading to said fire escape" and making access thereto difficult and impossible, the plaintiff's deceased was unable to escape and was burned to death.

The jury returned a verdict in favor of the plaintiff for twenty-five hundred dollars, and from a judgment entered upon that verdict, the defendant appeals.

MILLER, GORHAM & WALES, for appellant.

DAVID K. TONE, and H. M. ASHTON, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

It is urged that the third count of the declaration is not sustained by the evidence, and that the court erred in not instructing the jury to disregard it, as requested by defendant's counsel. Counsel argue that because the only negligence therein charged is "in obstructing *the passageway* leading to the fire escape," no recovery can be had upon that count without proof that *all* approaches or passageways on the sixth floor to the fire escape were obstructed at the time of the fire. We cannot agree with this contention. We think the plaintiff was entitled to recover under that count upon proof of facts from which a jury might reasonably find that the deceased came to her death without her fault because of the negligence of the defendant in obstructing any approach to the fire escape which would otherwise have afforded her a reasonably available means of egress. There was some evidence fairly tending to support that theory. But even if it could be held that so long as any approach to the fire escape, however inconvenient and difficult of access, was unobstructed, no recovery could be had upon this count, still we think, after an examination of the evidence in the record, that it cannot be said that there is no evidence fairly tending to support a finding that every approach to the fire escape was obstructed at the time of the fire. It was shown that direct access to the fire escape was obstructed, to some extent, at least, by a work bench and tool chest standing in front of the only

window on the sixth floor through which the fire escape could be reached. It was also shown that the south aisle was obstructed by furniture recently unloaded from the freight elevator. There is evidence tending to prove that all the aisles were used for the purpose of moving furniture in and out. One witness testified that at the time of the fire "there wasn't *any* aisle running through, to my knowledge." Another testified that at five o'clock of the afternoon preceding the fire, the north aisle (which appellant's counsel claim was unobstructed) was filled with furniture. There is considerable evidence to the contrary, but that fact would not justify the giving of the peremptory instruction.

It is next urged that the court erred in admitting in evidence certain ordinances in support of the fourth count of the declaration. Two ordinances are set up in the fourth count, the first in substance and the second in *haec verba*. In support of this count, plaintiff's counsel offered in evidence section 675 of the Municipal Code of the city of Chicago, as in force in 1905. That section provides, in substance, that all buildings of four or more stories in height, except private residences shall be provided and equipped with one or more metallic standpipes and ladders combined, or stair fire escapes, with wrought iron or steel balconies, with suitable railings at each floor, and firmly secured to the outer wall. This ordinance was objected to upon the ground that it had been amended, and, in effect, repealed by an ordinance passed in 1907 which provides that all such buildings shall be equipped with one or more *stairway* fire escapes. The ordinance of 1907 contains a proviso, however, to the effect "that buildings    *    *    * which are now equipped with ladder fire escapes, shall be exempt from the provision of this section;" and it appears from the evidence, that the fire escape on defendant's building was constructed prior to 1907. The original section and the amendment were both admitted in evidence. In connection therewith, section 684 was

also offered and admitted over defendant's objection. That section provides, in substance, that every building in the city "required by law to be equipped with metallic standpipes and wrought iron or steel balconies, or other fire escape devices," shall have displayed in conspicuous places notices showing the location of such fire escapes and the easiest way to reach them. We think these ordinances were properly admitted in evidence. They are well pleaded in the fourth count and are applicable to the facts of the case. The building in question was one of those mentioned in the proviso to the amended section 675, and was within the class of buildings "required by law" to be equipped with a "fire escape device." We are also of the opinion that there is some evidence in the record fairly tending to support the material allegations of the fourth count, and that therefore the court did not err in refusing to instruct the jury to disregard the same. But even if there was no competent evidence in support of this count, the alleged error in refusing to instruct the jury to disregard it would be harmless, so long as there was proof sufficient to sustain a recovery on any other count. *Scott v. Parlin & Orendorff Co.*, 245 Ill. 460.

It is next claimed that the fifth count does not declare upon a violation of the "Factory Act" of Illinois, nor does it state a cause of action at common law. Section 14 of the so-called Factory Act of 1909 (chapter 48, Hurd's R. S., J. &. A. ¶ 5404) provides that "in all factories, mercantile establishments, mills or workshops, sufficient and reasonable means of escape in case of fire shall be provided, by more than one means of egress, and such means of escape shall at all times be kept free from any obstruction and shall be kept in good repair and ready for use, and shall be plainly marked as such." We think the fifth count states a good cause of action under this statute. It is true that the statute is not mentioned, but the negligence charged is, in effect, a failure to comply with the statutory requirements. The count states (with perhaps

unnecessary particularity) facts which, if true, show that the defendant owed the plaintiff's intestate a duty under the statute which it negligently failed to perform, and that she was injured without her fault by the defendant's negligence in that respect. The facts so alleged are, in substance, to the effect that defendant was operating a mercantile establishment and a workshop; that sufficient reasonable means of escape in case of fire, by more than one means of egress, were not provided by the defendant; that the sole means of escape in case of fire was one fire escape; that it was not kept free from obstructions and ready for use at the time of the fire, and that the plaintiff's intestate, while in the exercise of due care for her own safety, lost her life because the defendant negligently obstructed the way to the fire escape in such a manner as to make it difficult for her to reach the same when the fire occurred. The count being sufficient under the statute, it is unnecessary perhaps for us to say that we think the count also states a good cause of action at common law. It is undoubtedly true that there was no duty at common law to provide a fire escape. But where it is alleged that a fire escape was in fact provided by an employer for the use of his employes in case of fire, we think the duty devolved upon such employer, apart from the statute, to use reasonable care to keep the means of escape thus provided reasonably free from obstructions so that it may be used as a means of escape when occasion requires. The presence of a fire escape is, in such case, an assurance of safety upon which the employe may rely to a reasonable extent, precisely as he is entitled to rely, to a reasonable extent, upon the apparent condition of any other instrumentality or place provided for his use in and about the work which he is engaged to perform.

It is next contended that the verdict is contrary to the preponderance of the evidence. After a careful

examination of the evidence in the record, in the light of the very earnest argument of counsel, we think the evidence is such that we would not be justified in disturbing the verdict of the jury. In fact, we regard the evidence of several of the defendant's witnesses as supporting the plaintiff's theory of all the essential facts except as to the signs or notices.

It is finally urged that the court erred in not making an accurate statement of the law in two of the given instructions, and in refusing several instructions offered by the defendant. Without discussing each of these objections in deta.', we deem it sufficient to say that we have carefully considered the objections made and are of the opinion that none of them is well taken. The second refused instruction was misleading, argumentative and assumes that the means of escape were cut off by the fire and not by the obstructions. We think the jury were fairly and fully instructed.

Finding no reversible error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*